IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY and AUTO-OWNERS INSURANCE COMPANY, | |
| Plaintiffs, | Civil Action File No.: |
| v. | |
| ADVANCED SLEEP TECHNOLOGIES, INC.; JOSEPH L. POOLE; UNIVERSITY SLEEP ASSOCIATES; AUGUSTA LUNG ASSOCIATES, LLP; STEPHEN RONALD CALLAHAN, JR., as personal representative of STEPHEN RONALD CALLAHAN, SR., deceased; and LINDA D. CALLAHAN, individually and as surviving spouse of STEPHEN RONALD CALLAHAN, SR., deceased, | |
| Defendants. | |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs Owners Insurance Company and Auto-Owners Insurance Company file this Complaint for Declaratory Judgment, showing this Honorable Court as follows:

-1-

## PARTIES

### 1.

Owners Insurance Company ("Owners") is an insurance company organized and existing under the laws of the state of Ohio with its principal place of business in Michigan.

### 2.

Auto-Owners Insurance Company ("Auto-Owners") is an insurance company organized and existing under the laws of the state of Michigan with its principal place of business in Michigan.

### 3.

Advanced Sleep Technologies, Inc. ("Advanced Sleep") was at all material times a for-profit corporation organized and existing under the laws of the state of Georgia with its principal place of business in Richmond County, Georgia. Service may be perfected upon Advanced Sleep by serving it via its registered agent, Joseph L. Poole a/k/a Joe Poole, at 6475 Carriage Lane, Harlem, Columbia County, Georgia 30814. Advanced Sleep is subject to the jurisdiction and venue of this Court.

### 4.

Joseph L. Poole ("Poole") is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Columbia County, Georgia, who intends to make Georgia his home, and who is an individual citizen of

the state of Georgia. Defendant Poole is subject to the jurisdiction and venue of this Court.

5.

University Sleep Associates ("University Sleep") was at all material times an unincorporated organization doing business in the state of Georgia and in Richmond County, Georgia, with its principal place of business located at 1301 Broad Street, Augusta, Richmond County, Georgia. University Sleep is a citizen of the state of Georgia and is not a citizen of either Ohio or Michigan. Defendant University Sleep is subject to the jurisdiction and venue of this Court.

6.

Augusta Lung Associates, LLP ("Augusta Lung") is a for-profit limited liability partnership organized and existing under the laws of the state of Georgia with its principal place of business at 1301 Broad Street, Augusta, Georgia 30901. The partnership of Augusta Lung is comprised of the following individuals: A. Lynne Brannen, II, M.D., Michael S. Haynes, M.D., Varsha Kulkarni, M.D., and Scott Pethke, M.D. Drs. Brannen, Haynes, Kulkarni, and Pethke are natural persons who are citizens of the United States, who are physically present in Georgia, who intend to make Georgia their home, and who are individual citizens of the state of Georgia. Defendant Augusta Lung is subject to the jurisdiction and venue of this Court.

-3-

7.

Stephen Ronald Callahan, Jr., as personal representative of the Estate of Stephen R. Callahan, Sr., deceased, is a natural person who is a citizen of the United States, who is physically present in South Carolina, who resides in Aiken County, South Carolina, who intends to make South Carolina his home, and who is an individual citizen of the state of South Carolina. Callahan, Jr., is deemed to be a citizen of South Carolina for diversity jurisdiction purposes. *See* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."). At the time of his death, Callahan, Sr., was a resident and domiciliary of South Carolina, and he had the then-present intention to remain in South Carolina and call South Carolina his home at all times prior to, and up until the moment of, his death. *See*, *e.g.*, *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1170 (11th Cir. 2007) ("Where an estate is a party, the citizenship that counts for diversity purposes is that of the decedent, and she is deemed to be a citizen of the state in which she was domiciled at the time of her death."). Moreover, the Estate is a legal creation established under the laws of the state of South Carolina, following Callahan, Sr.'s death. Defendant Stephen Ronald Callahan, Jr., therefore, is a citizen of the state of South Carolina, is not a citizen of either Ohio or Michigan, and is subject to the jurisdiction and venue of this Court.

8.

Linda D. Callahan, individually and as surviving spouse of Stephen R. Callahan, Sr., deceased, is a natural person who is a citizen of the United States, who is physically present in South Carolina, who resides in Aiken County, South Carolina, who intends to make South Carolina her home, and who is an individual citizen of the state of South Carolina. Defendant Linda D. Callahan is subject to the jurisdiction and venue of this Court.

## JURISDICTION AND VENUE

9.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.

This Court may exercise personal jurisdiction over all of the parties joined in this lawsuit. Each Defendant is either located in the state of Georgia; or regularly conducts business in Georgia; or owns property in Georgia; or has purposefully availed themselves of the privilege of conducting activities in the state of Georgia by conducting business in this state. Defendants have otherwise established continuous and systematic contacts with Georgia sufficient to confer personal jurisdiction. The incidents and contract forming the basis of this action occurred in

the state of Georgia. Jurisdiction over Defendants therefore will not offend traditional notions of fair play and substantial justice and is consistent with constitutional due process.

11.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

<strong><u>NATURE OF ACTION</u></strong>

12.

This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Plaintiffs and Defendants.

13.

A controversy of a judicial nature presently exists among the parties that demands a declaration by this Court so that Plaintiffs may have their rights and duties under the relevant contracts of insurance determined and avoid the possible accrual of damages.

14.

Each named defendant herein has been joined in compliance with case law requiring that insurers seeking a declaratory judgment bring into the action all

individuals or entities with a financial or other interest in the outcome of the coverage issues to be decided through the declaratory judgment action.

## THE UNDERLYING LAWSUIT

15.

On January 25, 2021, Stephen Ronald Callahan, Jr., as personal representative of Stephen Ronald Callahan, Sr., deceased, and Linda D. Callahan, individually and as surviving spouse of Stephen Ronald Callahan, Sr., deceased, filed a Complaint for Damages against Advanced Sleep Technologies, Inc., Joseph L. Poole, University Sleep Associates, Augusta Lung Associates, LLP, John Does 1-5, and Richard Roe Corporations 1-5 in the Superior Court of Richmond County, State of Georgia ("Underlying Lawsuit"). A true and accurate copy of the complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit A**.

16.

In the Underlying Lawsuit, it is alleged that Stephen Callahan Sr., deceased (hereinafter, "Decedent") was a patient of Augusta Lung in 2017-2018 where he was treated for chronic obstructive pulmonary disease (COPD), obstructive sleep apnea syndrome, and related issues. (*See* Underlying Lawsuit, ¶ 19). Decedent suffered from a myriad of other health complications, including congestive heart failure, coronary artery disease, rheumatoid arthritis, obesity, lower extremity edema,

altered mental status, and dizziness. *Id.* He was required to use oxygen due to shortness of breath and a walker for mobility. *Id.*

17.

On December 6, 2018, Dr. Brannen at Augusta Lung scheduled Decedent for a sleep study that was to be performed on January 25, 2019. (*See* Underlying Lawsuit, ¶ 19).

18.

The sleep study was performed at Advanced Sleep (*See* Underlying Lawsuit, Ex. A at ¶¶ 7, 9).

19.

Decedent's son, Stephen Callahan, Jr., drove his father to the appointment and he was advised that the sleep study would be completed by 7:00 am the following morning. (*See* Underlying Lawsuit, ¶ 22).

20.

Decedent's son returned to Advanced Sleep's facility the following morning and knocked on the door of the facility upon arrival. (*See* Underlying Lawsuit, ¶ 23). At that time, Decedent was being transferred from his bed to a chair by the sleep technician. *Id.* at ¶ 24. It is alleged that "[i]n responding to the knock at the door, [Advanced Sleep's] sleep technician abandoned her assistance of [Decedent] and went to open the door, despite [Decedent's] need for continued assistance." *Id.*

21.

After the sleep technician left the room, Decedent allegedly "lost his balance and fell backwards hitting a table before striking the floor." (*See* Underlying Lawsuit, ¶ 25).

22.

Decedent's son and Advanced Sleep's "technician heard the crashing sound of [Decedent's] fall" and the "sleep technician assisted [Decedent] to a chair." (*See* Underlying Lawsuit, ¶ 25).

23.

It is alleged that Decedent "indicated that his back hurt, and [Decedent's] son observed an abrasion." (*See* Underlying Lawsuit, ¶ 26).

24.

Reportedly, Advanced Sleep's "sleep technician stated she would notify [Decedent's] physician of the fall; however, there is no indication from medical records that such notification occurred." (*See* Underlying Lawsuit, ¶ 27).

25.

It is alleged that Decedent's "back pain worsened, and on January 28, 2019, [Decedent] was seen at University Prompt Care (UPC) in Aiken, South Carolina[,]" where staff noted that Decedent "exhibited decreased range of motion, tenderness,

edema, and back and flank pain" and that "it hurt for [Decedent] to breath." (*See* Underlying Lawsuit, ¶ 28).

26.

Subsequent x-rays "identified compression fractures to [Decedent's] T12 and L2 vertebrae. [Decedent] was discharged to University Hospital's emergency department for further evaluation and treatment." (*See* Underlying Lawsuit, ¶ 29).

27.

It is alleged that Decedent's "condition and overall health deteriorated, and on February 16, 2019, less than one (1) month after his traumatic fall and injuries at the Facility, [Decedent] passed away from related complications." (*See* Underlying Lawsuit, ¶ 30).

28.

The Complaint filed in the Underlying Lawsuit asserts the following causes of action: Count I - Professional Negligence; Count II - Ordinary Negligence/Simple Negligence; and Count III - Loss of Consortium. (*See* Underlying Lawsuit, ¶¶ 31-48).

29.

In support of their professional negligence claim, Stephen Ronald Callahan, Jr. and Linda D. Callahan allege that the underlying defendants, including Advanced Sleep and its staff, "owed a duty to [Decedent] to comply with the standard of care

and skill exercised by healthcare providers . . . during [Decedent's] admission at the Facility[,]" and that they "violated the standard of care and skill exercised by healthcare providers generally under similar conditions and like surrounding circumstances such as those presented by [Decedent] in their care and treatment of him." (*See* Underlying Lawsuit, ¶¶ 32-33). In further support of these claims, Stephen Ronald Callahan, Jr. and Linda D. Callahan filed an Affidavit from Donna S. Jones, RN, who opined that "the Health Care Staff at Advanced Sleep Technologies . . . failed to meet the standard of care and treatment of [Decedent] while under their care." *Id.* at ¶ 34, Ex. A at ¶ 7. Nurse Jones specifically opined that Advanced Sleep's sleep technician "deviated from the standard of care, while under similar conditions and like circumstances employed by healthcare professionals in the area of practice, profession, and specialty at issue" by "failing to recognize and know when a patient is at high risk for falls[,]" "failing to implement proper fall precautions for [Decedent,]" and "by failing to document and/or notify the physician of a patient fall." *Id.* at Ex. A at ¶ 7.

30.

In support of their ordinary negligence/simple negligence claim, Stephen Ronald Callahan, Jr. and Linda D. Callahan allege that the underlying defendants, including Advanced Sleep and its staff, "failed to exercise ordinary and reasonable care in provision of services for [Decedent]" through acts and omissions which all

relate to the provision of medical/health care, treatment, and services to Decedent, including the supervision, staffing, hiring, training, and policies related to the provision of those medical and health services. (*See* Underlying Lawsuit, ¶ 42)

31.

In support of their loss of consortium claim, Stephen Ronald Callahan, Jr. and Linda D. Callahan allege that "[a]s a direct result of the actions of all Defendants averred above," Decedent's wife "is entitled to recover the full value of extraordinary damage to her marriage and partnership with [Decedent] due to the acts or omissions of Defendants, including but not limited to, the right arising out of her marriage relationship to the love, companionship, and conjugal affection of her husband[,]" and that Decedent's wife has been "deprived of her husband's companionship, society, support, and services." (*See* Underlying Lawsuit, ¶ 48).

32.

In the Underlying Lawsuit, Stephen Ronald Callahan, Jr. and Linda D. Callahan seek to recover special damages in the form of medical bills in the amount of $5,668.39 and funeral expenses in the amount of $7,880.00, as well as compensatory damages in excess of $100,000.00 and loss of consortium damages in excess of $100,000.00. (*See* Underlying Lawsuit, p. 13).

## THE INSURANCE CONTRACTS

33.

Owners issued a Businessowners Policy to Advanced Sleep, policy number 48-185-982-00, with an effective policy period of October 14, 2018 through October 14, 2019, subject to certain terms, conditions, and applicable law. A true and accurate copy of the Businessowners Policy is attached hereto as **Exhibit B**.

34.

Auto-Owners issued a Commercial Umbrella Insurance Policy to Advanced Sleep, policy number 48-185-982-01, with an effective policy period of October 14, 2018 through October 14, 2019, subject to certain terms, conditions, and applicable law ("Umbrella Policy"). A true and accurate copy of the Umbrella Policy is attached hereto as **Exhibit C**.

35.

Defendants herein, including Advanced Sleep, seek a defense and indemnity under the Businessowners Policy and the Umbrella Policy for the claims asserted in the Underlying Lawsuit.

36.

Owners and Auto-Owners issued a reservation of rights letter to Advanced Sleep and retained counsel to defend Advanced Sleep in the Underlying Lawsuit subject to a full reservation of rights. A true and accurate copy of the reservation of rights letter is attached hereto as **Exhibit D.**

37.

Questions exist as to whether the Businessowners Policy issued by Owners or the Umbrella Policy issued by Auto-Owners afford coverage for the claims and damages upon which the Underlying Lawsuit is based, and whether Owners or Auto-Owners have any duty to defend or indemnify any defendants named in the Underlying Lawsuit.

## BUSINESSOWNERS POLICY

38.

The Businessowners Policy contains **Businessowners Liability Coverage Form BP 00 06 01 87**, which provides, in pertinent part, the following:

A. **COVERAGES**

1. **Business Liability** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. […]

(Businessowners Liability Coverage Form BP 00 06 01 87, p. 1 of 14).

39.

The Businessowners Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Businessowners Liability Coverage Form BP 00 06 01 87, p. 11 of 14).

40.

The Businessowners Policy contains the following relevant exclusions:

**B.  EXCLUSIONS**

   **1.  Applicable to Business Liability Coverage -**

   This insurance does not apply to:

   […]

   **j.**   "Bodily injury" or "property damage" due to rendering or failure to render any professional service. This includes but is not limited to:

   […]

   (4)  Medical, surgical, dental, x-ray or nursing services or treatment;

   (5)  Any health service or treatment;

(Businessowners Liability Coverage Form BP 00 06 01 87, pp. 4-5 of 14).

41.

The Businessowners Policy also contains the following terms and conditions:

**E.   LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**

[…]

**2.   Duties In The Event Of Occurrence, Claim Or Suit**

   **a.**   You must see to it that we are notified promptly of an "occurrence" that may result in a claim. Notice should include:

   (1)   How, when and where the "occurrence" took place; and

   (2)   The names and addresses of any injured persons and witnesses.

   **b.**   If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".

   **c.**   You and any other involved insured must:

   (1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

[…]

**4.   Legal Action Against Us**

No person or organization has a right under

this policy:

    **a.**  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.**  To sue us on this policy unless all of its terms have been fully complied with.

[…]

(Businessowners Liability Coverage Form BP 00 06 01 87, p. 10 of 14).

## <u>COMMERCIAL UMBRELLA INSURANCE POLICY</u>

42.

The Umbrella Policy issued by Auto-Owners contains **Commercial Umbrella Policy Insuring Agreement Form 26800 (7-05)**, which provides, in pertinent part, the following:

### COVERAGE

    **A.**  **We** will pay those sums included in **ultimate net loss** that the **insured** becomes legally obligated to pay as damages because of:

      **1.**  **Bodily injury**;

      **2.**  **Property damage**;

      **3.**  **Personal injury**; or

      **4.**  **Advertising injury**

    to which this insurance applies caused by an **incident**.

-17-

(Commercial Umbrella Policy Coverage Form 26800 (7-05), pp. 6-7 of 20).

43.

The Umbrella Policy defines "bodily injury" as "bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time." (Commercial Umbrella Policy Coverage Form 26800 (7-05), p. 2 of 20).

44.

The Umbrella Policy contains **Professional Services Exclusion Form 26809 (7-05)**, which modifies the coverage provided as follows:

It is agreed:

The following additional exclusion is added to the **EXCLUSIONS** section of the policy:

**Bodily injury, property damage, personal injury** or **advertising injury** arising out of:

**1.** The rendering of or failure to render any:

    **a.** Professional service;

    **b.** Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

    **c.** Any health or therapeutic service;

    **d.** Any service, treatment, advice or instruction conducive to health or of a professional nature; […]

-18-

(Professional Services Exclusion, Commercial Umbrella Policy, Form 26809 (7-05)).

45.

The Umbrella Policy also contains **Errors and Omissions Exclusion Form 26814 (1-06)**, which modifies the coverage provided as follows:

It is agreed:

The following exclusion is added to the **EXCLUSIONS** section of the policy:

Any negligent act, error or omission arising out of the performance of professional services caused by:

**1.** The **insured**; or

**2.** A person for whose acts the **insured** is legally liable.

This exclusion does not apply to any Errors and Omissions coverage specifically shown in the Declarations.

All other policy terms and conditions apply.

(Errors and Omissions Exclusion, Commercial Umbrella Policy, Form 26814 (1-06)).

46.

The Umbrella Policy sets forth the following terms and conditions:

**CONDITIONS**

This policy is subject to the following conditions:

[…]

### F.   Legal Action Against Us

**We** may not be sued unless:

1. There is full compliance with all the terms of this policy; […]

### H.   Notice of Incident, Claim or Suit

1. When an **incident** likely to involve **us** takes place, the **insured** must notify **us** in writing as soon as practicable, of any **incident**, claim or **suit**. Notice of an **incident** is not notice of a claim.

   The notice must give:

   a. **Your** name and policy number;

   b. The time, place and circumstances of the **incident**; and

   c. The names and addresses of injured persons and witnesses.

   […]

2. If claim is made or **suit** is brought, **we** must be advised promptly. All papers in connection with claims or **suits** must be sent to **us** without delay.

3. The **insured** must:

   a. Immediately send **us** copies of any correspondence, demands, notices, summonses or papers in connection with any claim or **suit**;

   […]

(Commercial Umbrella Policy Coverage Form 26800 (7-05), pp. 17-20 of 20).

## <u>DECLARATORY JUDGMENT</u>

### <u>Count One - No Coverage for Bodily Injury Claims</u>

47.

Owners and Auto-Owners hereby reallege and incorporate paragraphs 1 through 46 of this Complaint as if set forth fully herein.

48.

Under the terms of the Businessowners Policy, there is no coverage for "bodily injury" "due to rendering or failure to render any professional service[,]" which includes but is not limited to "[m]edical . . . or nursing services or treatment" and "[a]ny health service or treatment[.]" (*See* Businessowners Liability Coverage Form BP 00 06 01 87, pp. 4-5 of 14).

49.

Pursuant to the terms and conditions of the Businessowners Policy, Owners should have no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" claims and damages "due to rendering or failure to render any professional service[,]" including but not limited to the rendering or failure to render any "[m]edical . . . or nursing services or treatment" and "[a]ny health service or treatment[.]"

50.

Under the terms of the Umbrella Policy, as modified by the Professional Services Exclusion, Form 26809 (7-05), there is no coverage for "bodily injury" "arising out of: 1. The rendering of or failure to render any: a. Professional service; b. Medical . . . or nursing services, treatment, advice or instruction; c. Any health or therapeutic service; d. Any service, treatment, advice or instruction conducive to health or of a professional nature[.]" (*See* Professional Services Exclusion, Commercial Umbrella Policy, Form 26809 (7-05)).

51.

Under the terms of the Umbrella Policy, as modified by the Errors and Omissions Exclusion, Commercial Umbrella Policy, Form 26814 (1-06), there is no liability coverage for any damages arising out "[a]ny negligent act, error or omission arising out of the performance of professional services caused by" the "insured" or any "person for whose acts the insured is legally liable." (*See* Errors and Omissions Exclusion, Commercial Umbrella Policy, Form 26814 (1-06)).

52.

Pursuant to the terms and conditions of the Umbrella Policy, as modified by the Professional Services Exclusion, Form 26809 (7-05) and the Errors and Omissions Exclusion, Commercial Umbrella Policy, Form 26814 (1-06), Auto-Owners should have no obligation to provide a defense to the Underlying Lawsuit

or to indemnify the named Defendants for "bodily injury" claims and damages "arising out of . . . The rendering of or failure to render any . . . Professional service . . . Medical . . . or nursing services, treatment, advice or instruction . . . Any health or therapeutic service . . . Any service, treatment, advice or instruction conducive to health or of a professional nature[,]" nor is Auto-Owners required to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" claims and damages for "[a]ny negligent act, error or omission arising out of the performance of professional services caused by" the "insured" or any "person for whose acts the insured is legally liable."

53.

The Underlying Lawsuit asserts claims for "bodily injury" arising out of the alleged failure of Advanced Sleep's sleep technician to render professional services, including medical and health care, treatment, and services. Specifically, the Underlying Lawsuit and Affidavit filed in support thereof, allege that Decedent's death was caused by professional negligence and the failure of the underlying defendants, including Advanced Sleep and its staff, "to comply with the standard of care and skill exercised by healthcare providers . . . during [Decedent's] admission at the Facility[,]" and that underlying defendants "violated the standard of care and skill exercised by healthcare providers generally under similar conditions and like surrounding circumstances such as those presented by [Decedent] in their care and

treatment of him." (*See* Underlying Lawsuit, ¶¶ 32-33). According to the Affidavit from Donna S. Jones, RN, which was attached to the Underlying Lawsuit, "the Health Care Staff at Advanced Sleep Technologies . . . failed to meet the standard of care and treatment of [Decedent] while under their care." *Id.* at ¶ 34, Ex. A at ¶ 7. Nurse Jones specifically opined that Advanced Sleep's sleep technician "deviated from the standard of care, while under similar conditions and like circumstances employed by healthcare professionals in the area of practice, profession, and specialty at issue" by "failing to recognize and know when a patient is at high risk for falls[,]" "failing to implement proper fall precautions for [Decedent,]" and "by failing to document and/or notify the physician of a patient fall." *Id.* at Ex. A at ¶ 7.

54.

The Underlying lawsuit also alleges claims of "bodily injury" arising out of ordinary/simple negligence, because the underlying defendants, including Advanced Sleep and its staff, purportedly "failed to exercise ordinary and reasonable care in provision of services for [Decedent]" through various acts and omissions which all relate to the provision of medical/health care, treatment, and services to Decedent, including the supervision, staffing, hiring, training, and policies related to the provision of those medical and health services. (*See* Underlying Lawsuit, ¶ 42).

55.

To the extent that the loss of consortium claims in the Underlying Lawsuit purport to assert damages for "bodily injury," those claims are based on the same acts or omissions asserted in the counts for professional negligence and ordinary negligence, which are all based on the underlying defendants' failure to provide adequate medical/health care, treatment, and services to Decedent.

56.

There is no coverage under either the Businessowners Policy or the Umbrella Policy for the "bodily injury" claims asserted in the Underlying Lawsuit, because those claims are premised on the underlying defendants' failure to render adequate medical/health care, treatment, and services to Decedent while Decedent was an admitted patient in the Advanced Sleep facility, and therefore these claims are subject to exclusions j.(4)-(5) in the Businessowners Policy, as well as the Professional Services Exclusion, Form 26809 (7-05) and the Errors and Omissions Exclusion, Commercial Umbrella Policy, Form 26814 (1-06) in the Umbrella Policy.

57.

Because the "bodily injury" claims set forth in the Underlying Lawsuit are clearly and unambiguously excluded from coverage by operation of the above-cited exclusions in the Businessowners Policy and Umbrella Policy, neither Owners nor

Auto-Owners have any duty or obligation to provide a defense or indemnity to the Defendants for the "bodily injury" claims asserted in the Underlying Lawsuit.

58.

Owners and Auto-Owners are entitled to a judgment declaring that no Defendant is afforded coverage under the Businessowners Policy and Umbrella Policy because all of the "bodily injury" claims and damages sought in the Underlying Lawsuit arose out of the underlying defendants' failure to provide adequate medical/health care, treatment, and services, which are actions and omissions that are expressly excluded from coverage. Consequently, neither Owners nor Auto-Owners have a duty to defend or indemnify any of the Defendants against the "bodily injury" claims asserted and damages sought in the Underlying Lawsuit.

## Count Two - No Coverage for Derivative Claims of Negligent Supervision, Hiring, Training, Staffing and Policies

59.

Owners and Auto-Owners hereby reallege and incorporate paragraphs 1 through 58 of this Complaint as if set forth fully herein.

60.

To the extent that the Underlying Lawsuit alleges "bodily injury" claims arising out of negligent supervision, hiring, training, staffing, and policies, there is no coverage for these derivative claims because they are wholly dependent on and

would not exist but for the underlying defendants' failure to provide adequate medical/health care, treatment, and services, which constitute actions and omissions that are expressly excluded from coverage under the Businessowners Policy and Umbrella Policy.

61.

Accordingly, Owners and Auto-Owners are entitled to a judgment declaring that the Policy does not afford liability coverage for "bodily injury" claims and damages arising out of the derivative claims of negligent supervision, hiring, training, staffing, and policies.

## Count Three - Failure to Provide Timely Notice

62.

Owners and Auto-Owners hereby reallege and incorporate paragraphs 1 through 61 of this Complaint as if set forth fully herein.

63.

The Businessowners Policy and Umbrella Policy require the insured to perform certain conditions in the event of an occurrence, incident, or suit, including the requirement that the insured provide Owners and Auto-Owners with timely notice of an "occurrence," event, or incident that may give rise to a claim.

64.

Under the terms of the respective polices and applicable law, the requirement that the insured provide timely notice to Owners and Auto-Owners is a condition precedent to coverage under both the Businessowners Policy and Umbrella Policy.

65.

The alleged incident that is the subject of the Underlying Lawsuit occurred on January 25, 2019, but neither Owners nor Auto-Owners were notified of that event or resulting injury until February 4, 2021, more than two years after the incident occurred.

66.

Defendants did not timely notify Owners or Auto-Owners of the alleged incident and injury which form the basis of the Underlying Lawsuit.

67.

By failing to timely notify Owners and Auto-Owners of an alleged "occurrence," event, or incident, Defendants breached the conditions precedent to coverage set forth in the Businessowners Policy and Umbrella Policy.

68.

Owners and Auto-Owners have no duty to defend or indemnify Defendants in the Underlying Lawsuit because Defendants breached the conditions precedent to coverage set forth in the Businessowners Policy and Umbrella Policy.

-28-

69.

Owners and Auto-Owners are entitled to a judgment declaring that no Defendant is afforded coverage under either the Businessowners Policy or Umbrella Policy due to breach of these conditions, and that neither Owners nor Auto-Owners have a duty to defend or indemnify any named Defendant against the Underlying Lawsuit or the claims asserted therein.

**<u>Count Four - No Coverage for Mental and Emotional Pain and Suffering</u>**

70.

Owners and Auto-Owners hereby reallege and incorporate paragraphs 1 through 69 of this Complaint as if set forth fully herein.

71.

The Underlying Lawsuit seeks damages for mental and emotional pain and suffering. (*See* Underlying Lawsuit, ¶¶ 35, 37, 45, 48).

72.

In relevant part, the Policy only extends liability coverage for damages because of or arising out of "bodily injury" as that term is defined under the Businessowners Policy and Umbrella Policy and subject to the other terms and limitations set forth in the policies.

73.

Under the terms of the Policy and applicable law, the Policy does not afford personal liability coverage for mental and/or emotional pain and suffering because those damages do not constitute "bodily injury" as that term is defined under the Businessowners Policy and Umbrella Policy.

74.

Owners and Auto-Owners are entitled to a judgment declaring that neither the Businessowners Policy nor the Umbrella Policy afford liability coverage for damages for mental and/or emotional pain and suffering.

## Count Four - No Coverage for Compensatory Damages, Attorney's Fees, and Litigation Costs

75.

Owners and Auto-Owners hereby reallege and incorporate paragraphs 1 through 74 of this Complaint as if set forth fully herein.

76.

In the Underlying Lawsuit, Defendant Stephen Ronald Callahan, Jr. and Linda D. Callahan seek an award of compensatory damages, attorney's fees, and litigation expenses.

77.

The Businessowners Policy and Umbrella Policy afford no coverage for compensatory damages as such damages are not in compensation for a covered injury as set forth hereinabove, and there can be no recovery for attorney's fees and litigation expenses because the underlying claims upon which the Underlying Lawsuit is based are excluded from coverage. *See Bituminous Cas. Corp. v. N. Ins. Co. of N.Y.*, 548 S.E.2d 495, 496 (Ga. Ct. App. 2001).

78.

Owners and Auto-Owners are entitled to a judgment declaring that no Defendant is afforded coverage for the compensatory damages, attorney's fees or litigation expenses sought in the Underlying Lawsuit.

**WHEREFORE**, Plaintiffs pray that this Court enter judgment finding that they have no duty to defend or indemnify any Defendant against the claims asserted in the Underlying Lawsuit; that this Court bind each and every named party herein by said judgment; that Plaintiffs be awarded costs in this action; and for such further relief as this Court may deem just and appropriate.

This 26th day of May, 2021.

Respectfully submitted,

KENDALL | MANDELL, LLC

/s/ M. Brandon Howard
Michael C. Kendall
Georgia Bar No. 414030
Chad M. Brock
Georgia Bar No. 357719
M. Brandon Howard
Georgia Bar No. 550524
*Attorneys for Owners Ins. Co. and*
*Auto-Owners Ins. Co.*

3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone:   (770) 577-3559
Facsimile:    (770) 577-8113
mckendall@kendallmandell.com
cmbrock@kendallmandell.com
mbhoward@kendallmandell.com