IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| OWNERS INSURANCE COMPANY and AUTO-OWNERS INSURANCE COMPANY, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | CV 121-086 |
| ADVANCED SLEEP TECHNOLOGIES, INC., et al., | * * * | |
| Defendants. | * | |

**O R D E R**

Before the Court is Plaintiffs Owners Insurance Company ("Owners") and Auto-Owners Insurance Company's ("Auto-Owners") motion for summary judgment. (Doc. 32.) For the reasons that follow, Plaintiffs' motion is **GRANTED**.

**I. BACKGROUND**

In this case, Plaintiffs seek a declaratory judgment about their rights and duties under the insurance contracts into which they entered with several of the Defendants. (See Doc. 1.) The Court previously laid out some of the facts in its March 18, 2022 Order denying Defendants University Sleep Associates ("USA") and Augusta Lung Associates, LLP ("ALA") motion to dismiss. (Doc. 54.) However, the Court will repeat those facts below for convenience.

Plaintiffs Owners and Auto-Owners each provided one insurance policy to Defendant Advanced Sleep Technologies, Inc. ("Advanced Sleep"), an Augusta-based medical facility that conducts sleep studies for its patients. (Doc. 1, ¶¶ 1-3, 17-18.) Owners provided a businessowners policy ("Businessowners Policy"), while Auto-Owners provided a Commercial Umbrella Insurance Policy ("Umbrella Policy"). (Id. ¶¶ 33-34.) Now, Advanced Sleep and other defendants are being sued in the "Underlying Lawsuit," an action filed in the Superior Court of Richmond County, Georgia, as further detailed below.

As alleged in the Underlying Lawsuit,[1] Decedent Stephen Callahan, Sr. ("Decedent") underwent a sleep study operated by Advanced Sleep in January 2019. (Doc. 1-2, at 7; Doc. 32-2, at 6; Doc. 43, at 6; Doc. 44, at 8.) At the conclusion of the sleep study, "Decedent was being transferred from his bed to a chair by Advanced Sleep's sleep technician when the Decedent's son arrived at the sleep study facility to pick up his father and knocked on the door of the facility." (Doc. 32-2, at 7; Doc. 43, at 6-7; Doc. 44, at 8.) "[I]n responding to the knock at the door, Advanced Sleep's sleep technician abandoned her assistance of Decedent and

---

[1] Notably, the truth of many of these facts is disputed and is the subject of the Underlying Lawsuit. For the purposes of the present motion, all that matters is what is *alleged* in the Underlying Lawsuit. As such, the Court lays out the facts here for background and so the reader can understand the nuances of the claims made in the Underlying Lawsuit. This section, and any other commentary on the factual underpinnings of the Underlying Lawsuit, should not be understood to constitute findings of fact by the Court.

2

went to open the door, despite Decedent's need for continued assistance." (Doc. 32-2, at 7 (alterations adopted); Doc. 43, at 7; Doc. 44, at 9.) "After the sleep technician left the room, Decedent allegedly lost his balance and fell backwards[,] hitting a table before striking the floor." (Doc. 32-2, at 7 (alterations adopted); Doc. 43, at 7; Doc. 44, at 9.) "Decedent's son and Advanced Sleep's technician heard the crashing sound of Decedent's fall and the sleep technician assisted Decedent to a chair." (Doc. 32-2, at 7 (alterations adopted); Doc. 43, at 7; Doc. 44, at 9-10.) "The Underlying Lawsuit alleges that Decedent indicated that his back hurt, and Decedent's son observed an abrasion." (Doc. 32-2, at 8 (alterations adopted); Doc. 43, at 7-8; Doc. 44, at 10.) Advanced Sleep's "sleep technician stated she would notify Decedent's physician of the fall; however, there is no indication from medical records that such notification occurred." (Doc. 1, at 9. (alterations adopted).) Over the next month, "Decedent's back pain worsened, and on January 28, 2019, Decedent was seen at University Prompt Care (UPC) in Aiken, South Carolina." (Id.) "Subsequent x-rays identified compression fractures to Decedent's T12 and L2 vertebrae," and his "condition and overall health deteriorated." (Id. at 10 (alterations adopted and quotations omitted).) Less than one month later, Decedent passed away from related complications. (Id.)

3

As a result, Decedent's son and widow, Defendants Stephen Ronald Callahan, Jr. and Linda Callahan (together, the "Callahan Defendants"), brought the "Underlying Lawsuit" against Advanced Sleep and a number of related entities in the Superior Court of Richmond County on January 25, 2021 alleging three causes of action: professional negligence, ordinary negligence, and loss of consortium. (Id. at 10-12.) Defendant Mr. Callahan brought suit as the personal representative of his late father, Decedent, and Defendant Ms. Callahan brought suit individually and as her late husband's surviving spouse. (Doc. 1-2, at 7-20.) The Callahan Defendants also sued Defendants USA, ALA, and Joseph L. Poole ("Poole"), which they allege are entities related to Advanced Sleep. (Doc. 1-2, at 3-4.)

After learning of the lawsuit, Plaintiffs issued a reservation of rights letter to Advanced Sleep and retained counsel to defend the same, subject to a full reservation of rights. (Doc. 1, ¶ 36.) However, Plaintiffs aver that "[q]uestions exist as to whether [the insurance policies] afford coverage for the claims and damages" alleged in the Underlying Lawsuit, "and whether [Plaintiffs] have any duty to defend or indemnify any defendants named in the Underlying Lawsuit." (Id. ¶ 37.) Thus, Plaintiffs brought this suit for a declaratory judgment clarifying their rights and obligations under the policies. (Id. ¶¶ 47-78.)

4

The Businessowners Policy provides Owners "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies." (Doc. 1-3, at 103.) It defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Id. at 113.) It also sets out an important exclusion from coverage: "This insurance does not apply to: . . . (j) 'Bodily injury' or 'property damage' due to rendering or failure to render any professional service. This includes but is not limited to . . . (4) Medical, surgical, dental, x-ray or nursing services or treatment; (5) Any health service or treatment[.]" (Id. at 104, 106-07.)

The Umbrella Policy includes similar provisions. For the sake of thoroughness, the Court sets out the provisions verbatim: "We will pay those sums included in ultimate net loss that the insured becomes legally obligated to pay as damages because of: (1) Bodily injury; (2) Property damage; (3) Personal injury; or (4) Advertising injury to which this insurance applies caused by an incident." (Doc. 1-4, at 15-16.) The Umbrella Policy also defines bodily injury as "bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time." (Id. at 11.) Finally, it also includes a similar exclusion from coverage: "The following additional

5

exclusion is added to the EXCLUSIONS section of the policy: Bodily injury, property damage, personal injury or advertising injury arising out of . . . [t]he rendering of or failure to render any . . . professional service; [m]edical, surgical, dental, x-ray or nursing services, treatment, advice or instruction; [a]ny health or therapeutic service; [a]ny service, treatment, advice or instruction conducive to health or of a professional nature." (Id. at 43.)

Plaintiffs seek summary judgment because, as they argue, they do not "have any duty or obligation [under the policies] to provide a defense or indemnity to the Defendants for the 'bodily injury' claims asserted in the Underlying Lawsuit." (Doc. 32, at 6.) They make the same argument for any "derivative claims of negligent supervision, hiring, training, staffing, and policies"; "loss of consortium or mental/emotional pain and suffering"; or compensatory damages, attorney's fees, and litigation expenses. (Id. at 5, 8.) Defendants oppose the motion. (Docs. 41, 42, 45.) The Court's findings are below.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, motions for summary judgment are granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue

of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

As explained above, the Local Rules require the movant to include a statement of undisputed material facts with its motion. See L.R. 56.1, SDGa. "Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.

7

1995)). Accordingly, the Court will only review the materials the Parties have specifically cited and legal arguments they have expressly advanced. See id.

In this action, the Clerk of Court provided all Parties notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 33.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

### III. DISCUSSION

Plaintiffs argue they are entitled to summary judgment because under the terms of their respective policies, they are not required to defend Defendants in the underlying action as a matter of law. (Doc. 32-1, at 10-23.) Plaintiffs argue this is true for two reasons. First, they argue all of the claims for damages arising in the Underlying Lawsuit "are alleged to have resulted from acts and omissions related to the provision of medical/health care, treatment, and related services which are expressly excluded from coverage under the policies." (Id. at 10.) Second, they argue all of Defendants' remaining claims are "derivative of the acts or omissions related to the provision of professional and

8

medical services[] which are excluded from coverage," and the plan does not require coverage for mental or emotional pain and suffering or compensatory damages, attorney's fees, and litigation expenses. (Id. at 23-25.)

**A. Defendants' Negligence Claims are Excluded from Coverage**

First, Plaintiffs claim they are not required to defend Defendants because the policy language excludes the type of damages sought in the Underlying Lawsuit. (Doc. 32-1, at 10.) "A declaratory judgment action involving interpretation of an insurance policy implicates contract law." Owners Ins. Co. v. Brinkley, No. CV 2:19-107, 2020 WL 4430969, at *4 (S.D. Ga. July 31, 2020) (citing Rothell v. Cont'l Cas. Co., 402 S.E.2d 283, 284 (Ga. Ct. App. 1991)). "Because the Policy was made and delivered in Georgia, Georgia contract law applies." Id. (citing Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc., 897 F. Supp. 1472, 1475 (S.D. Ga. 1995), aff'd, 133 F.3d 1405 (11th Cir. 1998)). "An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others." Lofton v. State Farm Mut. Auto. Ins. Co., 384 S.E.2d 245, 245 (Ga. Ct. App. 1989) (citation and internal quotation omitted). "[I]nsurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Jenkins v. CLF Healthcare, LLC, 481 F. Supp. 3d 1313, 1319-20 (S.D. Ga. 2020) (quoting Hays v. Ga. Farm Bureau

9

Mut. Ins. Co., 722 S.E.2d 923, 925 (Ga. Ct. App. 2012)). "As is the case with all contracts, unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc., 466 S.E.2d 4, 6 (Ga 1996). However, "exclusions in an insurance policy are to be interpreted narrowly, in favor of the insured, 'on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.'" Rentrite, Inc. v. Sentry Select Ins. Co., 667 S.E.2d 888, 892 (Ga. Ct. App. 2008) (citation omitted).

As is relevant here, the policies in this case are substantially similar, both including one relevant exclusion apiece. The Businessowners Policy exclusion states the policy "does not apply to: . . . (j) 'Bodily injury' or 'property damage' due to rendering or failure to render any professional service. This includes but is not limited to . . . (4) Medical, surgical, dental, x-ray or nursing services or treatment; (5) Any health service or treatment[.]" (Doc. 1-3, at 104, 106-07.) The Umbrella Policy excludes "Bodily injury, property damage, personal injury or advertising injury arising out of . . . [t]he rendering of or failure to render any . . . professional service; [m]edical, surgical, dental, x-ray or nursing services, treatment, advice or

10

instruction; [a]ny health or therapeutic service; [a]ny service, treatment, advice or instruction conducive to health or of a professional nature." (Doc. 1-4, at 43.)

Plaintiffs allege these provisions expressly exclude from coverage lawsuits brought due to Decedent's bodily injuries. (Doc. 32-1, at 10.) Specifically, Plaintiffs argue that all the claims in the Underlying Lawsuit – whether labeled as "Professional Negligence," "Ordinary Negligence," or "Simple Negligence" – "arose exclusively from the provision of professional services. But for that relationship, no duty would exist and the alleged failure to render services would not be actionable. This is the reason why the policies' exclusions apply." (Doc. 1-2, at 8-14; Doc. 48, at 2.) Essentially, Plaintiffs argue all of the claims in the Underlying Lawsuit are excluded from coverage, so they have no obligation to defend the Underlying Lawsuit. Defendants disagree, arguing Plaintiffs are required to defend the Underlying Lawsuit because, as they claim, the allegations of negligence in that suit are not limited to professional negligence; rather, the suit also alleges ordinary and simple negligence, which are not excluded from the policies. (See Doc. 41, at 6 ("The[] allegations in the underlying [c]omplaint could support a finding of ordinary negligence under existing legal precedents without the need of finding professional negligence"); Doc. 42, at 5 ("Plaintiff[s'] Motion attempts to narrowcast the Callahans' theories of

11

negligence, including the improper conflation of ordinary negligence and professional malpractice claims"); Doc. 45, at 11 ("because . . . claims [alleging ordinary negligence, i.e. negligence that does not involve the exercise of professional judgment or discretion under Georgia law] should not be excluded under the terms of the policies, and potentially fall within the [policies'] coverage, the Court should deny the motion").) They argue summary judgment is inappropriate because the Underlying Lawsuit's 'ordinary negligence' claims are separate and distinct from the "professional services" listed in the policies' exclusion language. (Id.) Thus, they argue some of the Underlying Lawsuit is not excluded from the policies and, as a result, Plaintiffs are contractually obligated to defend the Underlying Lawsuit.

As explained above, the fact of what allegations are made in the Underlying Lawsuit is generally undisputed. What remains for the Court is to determine, as a matter of law and contract interpretation, whether Plaintiffs are entitled to a declaratory judgment finding they are not required, under the policies, to defend the Underlying Lawsuit. This question turns on whether the Underlying Lawsuit consists only of claims for "professional services" as described in the policies' exclusions. If so, Plaintiffs are entitled to summary judgment; if not, summary judgment is inappropriate.

12

As in Jenkins, the Court finds that "[a]pplying the facts of this case to this policy language is straightforward." 481 F. Supp. 3d at 1325. No party disputes the Underlying Lawsuit asserts a "professional negligence claim" which is clearly excludable as a "professional service." (Doc. 1-2, at 7-11; Doc. 32-2, at 11; Doc. 41, at 5.) Plaintiffs certainly have no duty to defend these professional negligence claims because they fit plainly into the policies' exclusion language for claims arising due to "professional service[s]" and "medical treatment." (Doc. 1, ¶¶ 40, 44.)

After a thorough review of the law and record, the Court also finds the "ordinary negligence" claims in the Underlying Lawsuit fall under the exclusion language. The underlying complaint states this claim does "not implicate questions of professional judgment or medical competence" and "involve[s] custodial neglect perpetrated by persons who were not medical professionals." (Doc. 1-2, at 11.) However, the facts underpinning the 'ordinary negligence' claim are substantially similar to the facts underpinning the 'professional negligence' claim. (Id. at 8-9.) The underlying complaint notes,

> Whenever in this [c]omplaint it is alleged that Defendants did any act or failed to do any act, it is meant that the officers, partners, members, managers, agents, employees, servants, joint-venturers, or representatives of the designated Defendants respectively performed, participated in,

13

> ratified, or failed to perform such acts while in the course and scope of their employment, agency, partnership, joint or other representative relationship with the Defendants.

(Id. at 4-5.) It alleges "Defendants knew or should have known that [Decedent] was a fall risk and had difficulty standing, transferring, and ambulating without adequate assistance" – knowledge they would have only received through their professional treatment of Decedent. (Id. at 7.) Further, "one of Defendants' sleep technicians" attended and oversaw the sleep study, and the allegedly negligent act was performed by a sleep technician while Decedent was a patient on the premises "being transferred from his bed to a chair." (Id.) With these facts in mind, the harm that befell Decedent "clearly arose out of conduct that came within the scope of the exclusionary clause." Jefferson Ins. Co. of N.Y. v. Dunn, 496 S.E.2d 696, 699 (Ga. 1998) (citation omitted). Like in Jenkins, Decedent here "was receiving professional services and in the midst of a medical procedure" when one of the medical providers' employees committed the 'ordinary negligence.' 481 F. Supp. 3d at 1325. But for Decedent's medical treatment at Advanced Sleep, he would not have been laying on the bed in the clinic and in need of transfer to a chair and, subsequently, in need of transport home. "[T]he professional services rendered to [Decedent] unquestionably played a causative role in [his] death, and [therefore] the [allegedly ordinary negligence] cannot be

14

separated from the rendering of professional services." Id. at 1326.

Defendants offer a panoply of reasons why the underlying ordinary negligence claims are not subject to the policies' exclusions. However, all these arguments miss the mark. The Callahan Defendants argue Plaintiffs' construction "mischaracterizes and/or incorrectly conflates [their] distinct theories of negligence." (Doc. 42, at 4.) They argue the Underlying Lawsuit pleads ordinary negligence in the alternative to professional negligence, and that the two are distinct theories of recovery; that sleep technicians are not medical or healthcare professionals under Georgia law; that the ordinary negligence claims resulted from "administrative or clerical acts" that exist separately from medical malpractice; and that their underlying claims for corporate mismanagement sound in ordinary negligence. (Id. at 4, 6-7, 9-13.) Defendants Poole and Advanced Sleep concede Plaintiffs are not required to defend the professional negligence claims, but argue the "allegations in the underlying [c]omplaint could support a finding of ordinary negligence . . . without the need of finding professional negligence," and Plaintiffs therefore have an obligation to defend the Underlying Lawsuit. (Doc. 41, at 6, 9.) Defendants USA and ALA allege Plaintiffs have a duty to defend the Underlying Lawsuit because "[o]n the face of the [u]nderlying [c]omplaint, the [u]nderlying [c]laimants clearly

15

allege 'ordinary negligence,' i.e., negligence that does not involve the exercise of professional judgment or discretion under Georgia law." (Doc. 45, at 11 (citations omitted).)

None of these arguments require a different holding. Indeed, even if the Court agreed with Defendants on each and every one of their arguments, the claims for negligence would *still qualify under the policies* as "professional services" "'Bodily injury' or 'property damage' due to rendering or failure to render any professional service . . . including, not limited to[, in the case of the Businessowners Policy] . . . (4) Medical, surgical, dental, x-ray or nursing services or treatment; (5) Any health service or treatment," and in the case of the Umbrella Policy, "[t]he rendering of or failure to render any . . . professional service; [m]edical, surgical, dental, x-ray or nursing services, treatment, advice or instruction; [a]ny health or therapeutic service; [a]ny service, treatment, advice or instruction conducive to health or of a professional nature." (Doc. 1, ¶¶ 40, 44.) This is true because, as explained above, none of the allegedly 'ordinarily' negligent actions "would have even been needed but for" Decedent's presence at Advanced Sleep because of his status as a patient undergoing a sleep study at the same, "which is undoubtedly a professional service." Jenkins, 481 F. Supp. 3d at 1325. The actions underlying the ordinary negligence claim were professional services because they resulted, inseparably, from professional

services either rendered or failed to be rendered by an Advanced Sleep employee in the course of her job duties. Whether the actions constituted professional negligence or professional malpractice is ancillary to the analysis of whether the actions constituted "professional services" or other excludable behavior under the policies. While malpractice may be one example of a professional service, other acts that fall below the state law standards for malpractice may also be included in the definition of "professional services." As explained above, the Court finds the underlying claims allege actions that fall within that definition; therefore, they are excluded from the policies and Plaintiffs have no contractual obligation under the same to defend or indemnify[2] any Defendant of that suit.

## B. Defendants' Remaining Claims Are Also Excluded

Lastly, Plaintiffs seek summary judgment on their claim that they are not obligated to defend claims in the Underlying Lawsuit related to professional and medical services, damages for loss of consortium, mental or emotional pain and suffering, and compensatory damages, attorney's fees, and litigation expenses. (Doc. 32-1, at 23-25.) As explained above, all of the underlying claims for professional and medical services are clearly excluded

---

[2] "If there is no duty to defend, there is no duty to indemnify." Brinkley, 2020 WL 4430969, at *4 (citing Nat'l Cas. Co. v. Pickens, 582 F. App'x 839, 841 (11th Cir. 2014)).

17

under the policies, so Plaintiffs' motion as related to those claims is **GRANTED.**

Regarding Plaintiffs' other arguments, Plaintiffs first argue they are entitled to summary judgment on their duty to defend the underlying claims for loss of consortium because that claim is derivative of the above claims, on which the Court granted summary judgment. (Id. at 23-24.) No Defendant responds to this argument, so the argument is deemed unopposed and any counterargument is abandoned. See State Farm. Mut. Auto. Ins. Co. v. Marshall, 175 F. Supp. 3d 1377, 1385 (S.D. Ga. 2016) (citing Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014)). Even if Defendants had responded, the Court agrees with Plaintiffs that the claims for loss of consortium in the Underlying Lawsuit are derivative of that suit's claims for ordinary and professional negligence. (See Doc. 1-2, at 14 ("As a direct result of the actions of all Defendants averred above, Plaintiff, as wife, is entitled to recover the full value of extraordinary damage to her marriage and partnership with [Decedent] due to the acts or omissions of Defendants.").) The loss of consortium claim involves the same common nucleus of facts as the claims discussed above. Thus, summary judgment is appropriate on Plaintiffs' claim related to that count.

Regarding Plaintiffs' argument for summary judgment on its duty to defend claims for mental and emotional pain and suffering,

18

the only pain and suffering described in the Underlying Lawsuit relates directly to the negligence above, which the Court has already found is excluded from coverage. (See Doc. 1-2, at 11, 13, 14.) As Defendants Poole and Advanced Sleep argue, "[i]t does not appear that the underlying [c]omplaint alleges 'non-physical' mental and emotional pain and suffering as a basis for recovery"; rather, "[i]t alleges physical injury causing physical and emotional pain." (Doc. 41, at 11; Doc. 1-2, at 14.) And as the Court held above, such claims derive from the underlying defendants' negligence which is excluded from coverage; thus, Plaintiffs have no duty to defend these claims.

Finally, regarding Plaintiffs' argument for attorney's fees, "because the claims in the Underlying Lawsuit are excluded by the terms of the [policies], there can be no coverage for attorney's fees or punitive damages." Brinkley, 2020 WL 4430969, at *5 (citing Bituminous Cas. Corp. v. N. Ins. Co. of. N.Y., 548 S.E.2d 495, 496 (Ga. Ct. App. 2001)).

In sum, the Court agrees with Plaintiffs' other arguments and **GRANTS** their motion in full.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment (Doc. 32) is **GRANTED.** The

19

Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiffs, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of August, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA